## WORCESTER GAS LIGHT COMPANY *vs.* CITY OF WORCESTER.

A city ordinance provided that a gas company might lay pipes in the streets upon condition that "they shall furnish the city and citizens with gas as cheap as is furnished in Boston, New York and Baltimore;" and the company accepted the conditions and obligations of the ordinance. *Held*, that the meaning of the ordinance was that the company should at any time furnish gas as cheap as it was furnished at the same time in the specified cities, and not as cheap as it was furnished in those cities at the time of the passage of the ordinance.

CONTRACT to recover the price of gas furnished by the plaintiffs to the defendants in July and August 1872. At the trial in the Superior Court, before *Bacon*, J., without a jury, the defendants admitted that the plaintiffs furnished the gas, and the plaintiffs introduced evidence tending to show that $3.50 per 1000 cubic feet was a reasonable price therefor.

The defendants offered evidence to show that in 1849 Messrs Blake and Darracott and their associates formed an unincorporated joint stock company, under the name of the Worcester Gas Light Company, for supplying gas to Worcester; that the company applied to the city council for leave to erect gas works, and lay down pipes in the streets; that the city council passed the following ordinance: "May 3, 1849. Ordered, That Messrs. Blake and Darracott, and their associates, have leave to erect

coal gas works in this city, and to lay pipes for distributing the gas through the streets of the city upon the following conditions, viz. : 1. They shall construct and keep their works in such condition as to cause no nuisance to the public; in laying their pipes they shall leave the streets through which they pass in good condition, and shall save the city harmless from all claims for damages to persons or property, which may arise in consequence of the prosecution of the work of laying the pipes. 2. They shall lay their pipes of such size as shall insure a full supply of gas to all parts of the city where the same shall be used, and they shall extend service pipes from their main lines to the inside of the buildings in which the gas is to be used, free of charge to the consumers of the gas — they shall furnish the city and citizens with gas as cheap per cubic foot and of as good quality in every respect, as is furnished in Boston, New York or Baltimore. 3. They shall furnish the city during the years 1849 and 1850, with what coal gas may be needed in the following named streets, viz : Main Street, between Lincoln Square and Park Street, School, Thomas, Exchange, Foster and Mechanic Streets, severally between Main Street and the railroads ; also in Front Street from Main Street to Washington Square, Front to Green, through Salem and Park Streets ; also in Pleasant Street from Main to Chestnut Street ; and Summer Street on condition the trustees of the hospital will take the gas. 4. They shall make extensions of the pipe, whenever requested so to do by the city council, provided that they can be assured in all such cases, that the sales of gas shall produce six per cent. upon the cost of such extension. 5. Nothing in this order contained, nor in the contract to be made in pursuance thereof, shall be so construed as to prevent the city of Worcester from hereafter authorizing any other company to lay down pipes to supply the city with gas ; " that on March 12, 1850, the company passed and communicated to the defendants the following vote : " Whereas The Worcester Gas Light Com pany have accepted the conditions of an order of the city council of the city of Worcester, bearing date May 3, 1849, and have assumed all the liabilities imposed by said order on Messrs. Blake, Darracott, and their associates ; it is now Voted, That the

Worcester Gas Light Company will fully and faithfully perform all the said obligations required by said order, to be performed and executed by said Blake, Darracott, and their associates ; " that the company proceeded to erect gas works and lay down pipes, and carried on the business of furnishing gas until June 12, 1851, when the members of the company accepted the St. of 1851, *c.* 159, entitled " An act to incorporate the Worcester Gas Light Company," and duly organized themselves into the plaintiff corporation thereunder ; that the plaintiffs succeeded to all the works and pipes and carried on all the business of the former company ; and that on May 3, 1849, the price of gas furnished to consumers in the cities of Boston, New York and Baltimore was $3.50 per 1000 cubic feet, but that during the months of August and September 1872, the price of gas furnished to consumers in said cities was $2.75 per 1000 cubic feet. The plaintiffs objected to the admission of this evidence, and the judge excluded it and ordered judgment for the plaintiffs for the full amount claimed, being at the rate of $3.50 per 1000 cubic feet. The defendants alleged exceptions.

*E. R. Hoar & T. L. Nelson*, for the defendants.

*B. R. Curtis & G. F. Hoar*, for the plaintiffs.

MORTON, J. The order of the city council passed May 3, 1849, having been accepted and acted upon by the original proprietors of the Worcester Gas Light Company, created a contract between the company and the city. The act of incorporation of the plaintiffs provides that the corporation " shall assume all the liabilities of the present proprietors of the gas light works in Worcester, in relation to the making and selling of gas." St. 1851, *c.* 159, § 5. By accepting this act the plaintiffs therefore assumed and came under the liability, as to furnishing gas to the city, created by this contract.

The only question is as to the construction of that clause of the contract which provides that the corporation " shall furnish the city and citizens with gas as cheap per cubic foot and of as good quality in every respect, as is furnished in Boston, New York or Baltimore." The plaintiffs contend that this clause established as a standard of price the price for which gas was

furnished in Boston, New York or Baltimore at the time the contract was made. The defendants claim that the meaning of the contract is, that gas should be furnished for the future at the same price for which it should be furnished in the three cities named. In construing every contract the question is what is the intention of the parties. If that is clear it will prevail, though language may not be used with technical precision. This contract was designed to provide a rule for a distant and indefinite time. It must have been contemplated by the parties that the cost of manufacturing gas and its price in the cities named would vary from time to time. The price prevailing in the three cities, at the time the contract was made, was known or could have been easily ascertained, and if the intention had been to fix as a permanent price for the future the price then existing, it would have been more natural and simple to state it in dollars and cents. We are of opinion that the construction claimed by the defendants is the more reasonable construction, and that it was the intention of the parties to provide that the Worcester Gas Light Company should furnish gas to the defendants as cheaply, at all times, as it should be at the same time furnished in the three cities named. The expression " is furnished " relates to the time when the rule is to be applied and the gas furnished to the defendants. Such use of the present indicative form of the verb, to express a future contingent event, is common in our Constitution and statutes and in contracts.

We think therefore that the evidence offered by the defendants should have been admitted. 　　　　　*Exceptions sustained.*