Sedgwick, J.,
after the conclusion of the trial, rendered an opinion, to the effect that the Gilbert railroad acts authorized use of steam, without tube or equivalent screen, but that section 36 of the rapid transit act “was unconstitutional and void, that the defendant had no authority, in law, to construct its proposed railroad, either by virtue of its charter or the provisions of that act, and that the Sixth Avenue Railroad Company *387 suffered an injury peculiar to itself in the placing of the posts in the roadway ; and accordingly that the plaintiff was entitled to a perpetual injunction restraining defendant from building such railway (Reported in 41 Superior Ct. [J. & S.] 489).
II. Appeal to the general term.
From the judgment entered upon the findings of the judge the defendants appealed.
Grosvenor P. Lowrey, Charles Francis Stone and John K. Porter, for appellants, cited:
I. As to the limits under which this court should review the special term judgment: Wisser v. O’Brien, 3 Super. Ct. (J. & S.) 149, 152; Munro v. Potter, 34 Barb. 361; Mills v. Van Voorhies, 20 N. Y. 412, 423.
II. As to the pretended franchise: L. 1854, p. 323; Thompson v. N. Y. & H. R. R. Co., 3 Sandf. Ch. 625.
III. As to the obligation of contracts generally: Charles River Br. Co. v. Warren Bridge Co., 11 Pet. 420; Auburn, &c. Co. v. Douglass, 9 N. Y. 444; Rensselaer, &c. R. R. v. Davis, 43 Id. 137; Mohawk Bridge Co. v. Utica, &c. R. R., 6 Paige, 554; Ft. Plain Bridge Co. v. Smith, 30 N. Y. 44.
IV. As to the easement claimed by plaintiffs: Dunham v. Williams, 37 N. Y. 251; 1 Smith & Liv. Laws, 8; L. 1691, c. 18; 1 Hoffm. on Estates of Corp. 199; Schuchardt v. Mayor, &c., 53 N. Y. 202; People v. Kerr, 27 Id. 188; Kellinger v. Forty-second Street R. R. Co., 50 Id. 206; Matter of Ninth Avenue, 47 Id. 732; Anderson v. Rochester, &c. R. R., 9 How. Pr. 553; Higby v. Camden & Amboy R. R., 19 N. J. Ch. 279; Currier v. West Side R. R., 6 Blatchf. 495; Wyman v. Mayor, &c., 11 Wend. 494; Wetmore v. Story, 22 Barb, 488; In re Thirty-ninth Street, 1 Hill, 194; In re Thirty-second Street, 19 Wend. 129; Livingston v. Mayor, &c., 8 Id. 85; Torrey v. Camden & A. R. R., 18 N. J. Ch. 293; Cross v. Mayor, Id. 305-313; Higby v. Camden & A. R. R., 19 Id. 276; City of Philadelphia’s Appeal, 78 Pa. St. 39; 22 Eng. L. & E. 246; Arnold v. Holbrook, 42 Law J. Q. B. 83-84; Dime v. Petley, 15 Q. B. 276; Jersey City R. R. v. Hoboken R. R., 5 C. E. Green, 70; N. Y. & Harlem R. R. v. Forty-second Street R. R., 26 How. Pr. 70, 71; affi’d in 32 Id. 500; 50 Barb. 285; Id. 309; Carver v. Paul, 24 Penn. 207; Godley v. City of Philadelphia, Id. 637, 640, 641, 642-3; Polack v. San Francisco Orphan Asylum, 38 Cal. 490, 493; Fearing v. Irwin, 55 N. Y. 486; People v. Mayor of Brooklyn, 4 Id. 424; L. 1831, c. 252, § 2; Davies, 723; 8 Barb. 97-98; Waddell v. Mayor of N. Y., Id. 98; Wilson v. Mayor, 1 Den. 595; Elizabeth R. R. v. Combs, 10 Bush, 382; S. C., 19 Am. Rep. 72; Barnes v. South Side R. R., 2 Abb. Pr. N. S. 415; Attorney General v. L. B. R. R., 9 C. E., Green, 49; Hodgkinson v. L. I. R. R., 4 Edw. 411; Thompson v. R. R., 3 Sandf. Ch. 624.
V. As to the trust supposed to exist under the act of 1813, § 107: Briggs v. Davis, 21 N. Y. 577; Reg. v. Russell, 3 Ellis & Bl. (77 Eng. C. L.) 953; L. 1813, § 178; City of Georgetown v. Alexandria Canal Co., 12 Pet. 91, 96; People v. Roper, 35 N. Y. 636, 637; Embury v. Conner, 3 Id. 511, 2 R. S. (6 Ed.) 526, § 20; L. 1807, c. 115, §§ 4, 8; L. 1827, c. 239 (Davies, 687), § 1; Worcester City v. Worcester, 110 Mass. 353; Wellington v. Petitioners, 16 Pick. 88; Casey v. Harned, 5 Iowa, 14; L. 1810, c. 127; Davies’ Laws, p. 455; L. 1813, §§ 178, 185; Davies, pp. 532, 539; Matter of Turfler, 44 Barb. 52; Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 245; Smith v. City of Boston, 7 Cush. 254; Gould v. Hudson R. R. R., 6 N. Y. 522; Radcliff v. Mayor, 4 Id. 195; Wilson v. Mayor, 1 Den. 595; Lansing v. Smith, 8 Cow. 149; Garrison v. City of N. Y. 21 Wall. 203, 204.
VI. The evidence as to obstruction and damage Tate v. Ohio, 7 Ind. 483, 484; Williams v. Beardsley, 2 Carter (Ind.) 596; Dougherty v. Bunting, 1 Sandf. 1.
VII. As to crossing Broadway: It will be observed that the word “across ” is imported by construction into the exception, from the previous enabling clause ; and as the evident object of the exception was simply to prevent the building of steam railways on the line of those particular streets, we submit that by a fair -construction the exception should be so limited.
Joseph H. Choate and George F. Comstock, for respondent.
I. No questions arising out of the conflicting rights of the plaintiff and defendant, were involved in the decision of the court of appeals in the matter of the New York Elevated Railroad.* Nothing was there involved but the constitutionality and the ■construction of the rapid transit act.
II. If the plaintiffs have a property interest either in their existing railroad and franchise, or by virtue of, and as appurtenant to, their real estate abutting on the Sixth avenue which is in the least degree to be taken away or destroyed, they have a right to an injunction until just compensation has been made to them there for (Trustee of Presb. Soc. v. Auburn, &c. R. R. Co., 3 Hill, 567; Williams v. N. Y. Cent. R. R. Co., 16 N. Y. 97; Milhan v. Sharp, 27 Id. 611; 2 Story Eq. Jur. § 925: Craig v. Rochester City, &c. R. R. Co., 39 Id. 404; Mahon v. N. Y. Cent. R. R. Co., 24 Id. 658; Carpenter v. Oswego, &c. R. R. Co., Id. 655; Wager v. Troy Union R. R. Co. 25 Id. 526; Bloodgood v. M. &. H. R. R. Co., 18 Wend. 9).
III. As owners of property fronting on Sixth avenue the plaintiff, and other owners of similar property, have a right that that street shall be maintained as a highway, and kept open forever, for all the uses and purposes of a highway unincumbered throughout its whole length and breadth, in accordance with the provisions of the act of 1813,* under which it is formed, unless compensation is made for its obstruction (Heyward v. Mayor, 3 Seld. 314; Metropolitan Board of Works v. McCarthy, L. R. 7 App. Cas. 243; Becket v. Midland R. W. Co., L. R. 3 C. P. 82; Chamberlain v. West of London R. W. Co., 2 B. &. S. 605; Pumpelly v. Green Bay Co., 13 Wall. 166; Gardner v. Newburgh, 2 Johns. Ch. 162; Crawford v. Delaware, 7 Ohio St. 459; Cincinnati, &c. Ry. Co., v. Cumminsville, 14 Id. 523; Roberts v. Easton, 19 Id. 78).
IV. Compensation for what is in all cases essential, and is made by the constitution a condition precedent and as a substantial and valuable part of plaintiff’s property is proposed to be taken, it is entitled first to receive the full value of that (Cooley on Constitutional Limitations, 526; West River Bridge v. Dix, 6 How. U. S. 507; Richmond R. R. Co. v. La. R. R. Co., 13 Id. 81; Central Bridge Corp. v. Lowell, 4 Gray, 482; Boston Water Power Co. v. Boston &. W. R. R. Co., 23 Pick. 360; Commonwealth v. Pittsburgh, &c., R. R. Co., 58 Penn. St. 50; Same v. Penn. Canal Co., 66 Id. 41; Newcastle, &c. R. R. Co. v. Peru and Ind. R. R. Co., 3 Ind. 464; Charles River Bridge v. Warren Bridge, 11 Pet. 571).
V. The route laid out by the commissioners is in express violation of the prohibitions against crossing Broadway.
VI. If the corporate property, rights and franchises, of the plaintiffs are to be taken away, destroyed or substantially impaired by the defendants without just compensation first made, the acts authorizing it are in violation of the United States constitution (Milhan v. Sharp, supra; People v. Sturtevant, 9 N. Y. 263; West Bridge Co. v. Dix, 6 How. U. S. 507; Boston & Lowell *391 R. R. Co. v. S. & L. R. R. Co., 2 Gray, 35; 3 Kent Com. 458; Benson v. Mayor, &c., 10 Barb. 223; The Binghamton Bridge, 3 Wall. U. S. 51, rev’g 27 N. Y. 87; Wilmington R. R. v. Reid, 13 Id. 264.
Sanford, J.
The learned judge before whom this action was tried at special term, reached the conclusion that the defendant, the Gilbert Elevated Railway Company, had no authority in law, to construct the elevated railway in Sixth avenue, between Amity and Fifty-ninth streets, which it proposed to build pursuant to its charter and under the provisions of the rapid transit act (Laws of 1875, ch. 606), and for the reason that the thirty-sixth section of that act, upon which the defendant’s right to proceed with such construction depended, was unconstitutional and void. He accordingly rendered judgment, that the defendant be enjoined and forever restrained from building such railway. The question of the validity of the rapid transit act, and particularly of section 36, has since been presented to the court of appeals in certain proceedings entitled: “In the matter of the petition of the New York Elevated Bail way Company,”* and in other like proceedings, on the part of the defendant herein, on appeals entitled† Kobbe v. The Gilbert Elevated Railway Company and Anderson v. The Same. And that court has, in those cases, finally and authoritatively determined, that the rapid transit act is not obnoxious, in whole or in part, to the constitutional objections urged against its validity: and that under and by virtue of its charter and the provisions of that act the defendant has good right and lawful authority to build over the route provided for it by law, including the Sixth avenue, the railway whose construction is enjoined by the judgment now under *392 review. It is, therefore, obvious that the judgment appealed from cannot be sustained upon the ground upon which it was rendered, and that, unless other sufficient reasons for affirming it can be gathered from the pleadings, proofs, and findings upon which it was based, it will now be the duty of the appellate branch of the court to direct its reversal.
On the part of the plaintiff and respondent, the Sixth Avenue Railroad Company, it is insisted that the case, as presented, conclusively shows that that company has property rights and interests, both in its existing railroad and franchises, and also as incident or appurtenant to its lands abutting on the Sixth avenue, the beneficial enjoyment'whereof will be destroyed, impaired or disturbed by the construction and operation of the defendant’s proposed railway ; that such rights and interests are protected by the constitutional prohibition against the appropriation of private property to public use without just compensation; and that the ascertainment of the amount of such compensation, the appraisal of the damages incurred or sustained by reason of such destruction, injury or disturbance, and the payment, tender or offer of such compensation, when the amount thereof shall have been determined in the manner provided by law, are conditions precedent to the right of defendant to construct its proposed road ; and finally, that it is entitled by reason of the threatened invasion of such rights and interests to an injunction from a court of equity to restrain the construction of the defendant’s road until such compensation shall have been made.
It is obvious from a perusal of the opinion filed by the learned judge, at special term, that the views therein expressed cover but a part of the case as it was presented 'at the trial. His determination that section 36 of the rapid transit act was unconstitutional and void, rendered it, in his judgment, unnecessary and *393 unadvisable to pursue Ms inquiries further, inasmuch as by so doing nothing would be gained toward practically determining the rights of the parties. He accordingly declined to consider or pass upon other “grave and important questions” involved, including those now presented to the consideration of the court. In view of this fact, and as the case has not been fully considered in all its aspects, we should, perhaps, under the authority of Mills v. Van Voorhis (20 N. Y. 412), be justified in reversing the judgment, and directing a new trial, without inquiring whether upon other grounds than that on which the judgment in its favor was rendered, the plaintiff is entitled to the relief thereby accorded to it. The plaintiff would thus have an opportunity to secure more explicit findings of fact in regard to the proprietary rights and interests with which it claims to be vested, and more specific and deliberate conclusions therefrom as to the legality or lawlessness of their threatened invasion. It would seem that such questions ought to be passed upon deliberately by the tribunal of first instance before they are presented for adjudication to the appellate branch of the court. We have, however, thought it not improper, at the urgent instance of the respondent’s counsel, to inquire whether the judgment can be sustained, upon the propositions for which they now contend, and we have done so in the hope that the progress of the cause toward a complete and final adjudication might thus be accelerated.
In announcing the result of our deliberations it will be unnecessary to do more than state, briefly, the conclusions at which we have arrived, with the reasons therefor, without endeavoring to enforce them by illustration or argument.
The case shows no such invasion and partial destruction of the plaintiff’s road and franchise, as entitles it to compensation under the constitutional pro *394 vision for the protection of private property proposed to be taken for public use, in the exercise of the right of eminent domain. Compensation must doubtless be made for the appropriation and condemnation of corporate property and franchises, taken in the exercise of the right of eminent domain, equally as in case of the like appropriation or destruction of individual property and rights ; but it appears that no part of the plaintiff’s road, as it has been constructed and now exists, will be in anywise disturbed or interfered with by the execution of the plan, upon which it is proposed to erect the structure constituting the defendant’s elevated road. While it is found as a fact in the case, that the columns, to be erected on either side of the plaintiff’s tracks, will exclusively use and occupy spaces in the street, to the use of which the plaintiff is entitled, for the purposes of its franchise, there is no finding and no evidence that any space actually appropriated by the plaintiff to such purposes, or which now is or ever has been in its actual use and occupancy therefor, will be invaded, encroached upon or injuriously approximated by the defendant’s columns, platforms, stair-ways or any other parts or portions of its proposed structure. It cannot therefore be claimed that the plaintiff is entitled to compensation for the deprivation of any part of its road, considered as a physical and corporeal entity. The plaintiff’s franchise ■ entitles it to the use of every part of the entire space in the roadway of the Sixth avenue, to the extent requisite for the laying down thereon of a railroad with a double track, but its franchise is not to be construed as appropriating to its future exclusive use and occupancy spaces not requisite for that purpose after it has already exhausted the privilege accorded to it, by appropriating so much of the roadway to the purposes of a double track as its exigencies actually require (N. *395 Y. & Harlem R. R. Co. v. The Forty-second Street, &c., R. R. Co., 50 Barb. 285; affi’d Id. 309).
The alleged appropriation or invasion of any part of the plaintiffs’ road is expressly negatived by the finding that the running of defendants’ cars and engines upon the Sixth avenue over plaintiffs’ road, in case the defendants’ road were constructed,- would not prevent the practical running of plaintiffs’ cars by horses, or materially increase the expense of such running. The alleged invasion of its franchise, which consists in the right to lay a double track, and to run licensed cars thereon, does not appear either in the facts found or in the evidence, inasmuch as there is nothing in either tending to show that ample space for laying a double track on the surface of the avenue is not, and will not be fully available to the plaintiff, notwithstanding the erection of the structure proposed by the defendant, or that the running of its cars thereon will be in any degree obstructed or interfered with. The plaintiff, by virtue of its franchise has no control over or interest in that part of the avenue not occupied by its tracks, or actually traversed by its cars (N. Y. & Harlem R. R. v. Forty-second Street R. R., ut supra). Moreover plaintiffs’ rights and powers, as a railroad corporation organized under the general law, must be exercised in conformity with, and in subordination to such constitutional legislative requirements and conditions, as are, or may be, imposed by valid legislative enactment. Legislative authorization of a parallel and competitive railway involves no appropriation or deprivation of the vested rights and franchises of a railway already constructed, and is not an exercise of the right of eminent domain (Charles River Bridge Co. v. Warren Bridge Co., 11 Peters, 420; Auburn, &c. Co. v. Douglas, 9 N. Y. 444; Rensselaer, &c. R. R. v. Davis, 43 N. Y. 137; Ft. Plain Bridge Co. v. Smith, 30 N. Y. 44). Any loss or damage sustained *396 by reason of the competition of such lawfully authorized railway, is damnum absque injuria for which no compensation can be required. Private property cannot be said to be taken for public use, in the exercise of the right of eminent domain, merely because its value is impaired by the proximity of other property legitimately employed for the public use and benefit under the sanction and by the authority of a legislative enactment. The finding, therefore, that the construction and operation upon the Sixth avenue, of defendant’s proposed railroad would occasion special damage and injury to the plaintiff, is of no importance as bearing upon the question of the plaintiff’s constitutional right to compensation for an interference for the public benefit, with the beneficial use and enjoyment of its property. If the proposed elevated railway, as was held at special term, was unauthorized by law and a public nuisance, such finding would be essential to the maintenance, by the plaintiff, of an action to enjoin its construction; but, inasmuch as it is not a public nuisance, and as the use to be made of so much of the avenue as it shall of necessity occupy, is duly authorized by law, and is declared to be a public use, consistent with the uses for which such avenue is publicly held, this finding is immaterial. Such special damage results from no interference on the part of the defendant with either the franchise or tracks of the plaintiff. The plaintiff’s railroad and its double track may remain on the surface of the avenue in the exact locality it has always occupied, without the displacement of a single rail or switch, and the franchise of maintaining and operating it, and running licensed cars thereon, so far as appears from the evidence, may be beneficially used and enjoyed, hereafter as heretofore, without let or hindrance on the part of the defendant. The findings of the court at special term are to this effect.
The plaintiff has no easement or property right in *397 the roadway of Sixth avenue incident or appurtenant to its ownership of lands abutting thereon, the beneficial use or enjoyment whereof will be destroyed, diminished, impaired or interfered with by the construction or operation of the defendant’s proposed railway.
It does not appear from the evidence that any one, from or through whom the plaintiff’s title to its adjacent lands is derived was ever vested with title to the land now constituting Sixth avenue. It does appear that the title of the former owners of that land was absolutely and forever divested; and that the title thereto, in fee simple, was acquired by the corporation of the city of New York, under and by virtue of proceedings had for that purpose pursuant to the act of 1813. A long array of judicial decisions is cited in support of the proposition that the city corporation is fully vested with an absolute title in fee simple to the lands comprised within the limits of streets and avenues opened and laid out pursuant ■ to that act, nor is that proposition controverted. The contention of the plaintiff is that notwithstanding the provisions of the act of 1813, under the operation of which the fee of street or avenue may be deemed to have been taken from the former owners thereof and vested in the corporation in trust, as provided thereby, the owners of property fronting on such street or avenue are entitled by virtue of their ownership, and of the abutment of their property upon such street or avenue, to have the same maintained as a highway ; and forever kept open for all the uses and purposes of a highway, unincumbered throughout its length and breadth,by any obstruction which shall prevent or impair the use of every inch of it, either by the public, or by abutting owners, for all the public uses and common purposes of a highway. And it is insisted, with great earnestness and force, that this right, to which, as an abutting owner *398 upon Sixth avenue, the plaintiff claims to be entitled, is in its nature a proprietary interest in land, a property interest in the maintenance of the avenue as a highway by virtue whereof the plaintiff is entitled to compensation, in case of any infringement thereon, in the exercise of the right of eminent domain. The argument in support of this position proceeds mainly upon the assumption, not warranted by the evidence in this case, that the land comprised within the limits of the avenue was taken from persons who were also, at the time, owners of the land adjacent to and abutting on its exterior lines ; and that the compensation awarded to such persons for the land taken consisted chiefly in the benefits and advantages acquired by them as owners of the abutting lands, in having a broad highway opened in front of their remaining property, the use of which as such was forever secured by the trusts declared by the act.
Whatever benefits and advantages the owners of adjacent lands acquired, by virtue of opening the avenue, was paid for by assessments charged thereon, whether such owners were or were not proprietors of the lands within the limits of the avenue. And the trusts declared by the act were as much for the benefit of adjoining owners who had no interest in the land taken, but who paid such assessments in cash, as of those whose awards for damages, by reason of the condemnation of their lands within the lines' of the avenue, proved the equivalent of assessments for benefit imposed upon their lands adjacent to, but without, such lines. In each case adjacent owners contributed their respective shares of the expenses incurred in effecting the improvement. But they acquired by such contribution no exclusive right or interest in the street or avenues, and no easement in the nature of a right of way over the same, other than that which is held and enjoyed by the public at large. Abutting owners, *399 as such, have no special and peculiar interest in the enforcement of the trusts declared by the act. Those .trusts were created and declared for the benefit of the public; and the people at large, acting through the legislature, are at liberty to determine in what manner they shall be carried into effect. The views expressed in the case of the Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 245, commend themselves to our approval, and if sound they are conclusive against the claim of the plaintiffs to compensation, for the deprivation of any supposed property right in the avenues, existing as appurtenant to their lands abutting thereon. The like conclusion has very recently been adopted by one of the learned judges of the New York common pleas, in the case of Story v. New York Elevated Railway Company (October, 1877),* and the following cases, cited by him, seem to sustain fully the correctness of his decision (Lansing v. Smith, 4 Wend. 9; Benedict v. Gay, 3 Barb. 459; First Baptist Church v. The Utica & Schenectady R. R. Co., 6 Id. 313; Drake v. The Hudson R. R. R. Co., 7 Id. 508; Radcliff v. The Mayor of Brooklyn, 4 N. Y. 195; Gould v. Hudson R. R. R. Co., 6 Id. 522; People v. Kerr, 37 Barb. 357; 27 N. Y. 193; Coster v. The Mayor of Albany, 43 Id. 414; Kellinger v. Forty-second Street R. R. Co., 50 Id. 206).
But it is further urged as a fatal objection to the defendant’s claim of full right and authority to construct its road through Sixth avenue, that the route laid out for it by the commissioners appointed under the “rapid transit act,” is in direct violation of the implied prohibition contained in the fourth section of the act, with respect to crossing Broadway.
The court of appeals seems to have determined, in the cases of Kobbe and Anderson, above cited, that the *400 right of the defendant to proceed under the act, with respect to any part or portion of its road, not directly affected by this implied prohibition, is clear and unquestionable; that if crossing Broadway is prohibited by the act, such crossing is excluded by the commissioners from the routes designated by them, inasmuch as they expressly exclude from such routes, any street or part thereof, the use of which for the purposes of an elevated railway is excluded by the act; and that such exclusion does not invalidate the authority conferred by the act with respect to the residue of the designated route. In so far as such residue coincides with the existing route of a railroad corporation, such corporation may build upon the route designated. The authority is at least coextensive with the coincidence. If therefore the plaintiffs were entitled to an injunction upon this ground, it would only extend to and operate upon such portions of the defendants’ route as are included within the intersecting lines of Broadway. But the elements of interest and irreparable injury which are essential to the invocation of equitable interposition by injunction are wanting to any claim of the plaintiff with respect to merely that part of the def end-ant’ s route which intersects Broadway, and we do not understand counsel as claiming anything by virtue of this particular objection, unless it be held to invalidate the authority of the defendant with respect to the whole of Sixth avenue.
We are of opinion that the judgment cannot be upheld either upon this or the other grounds urged in support of it. It must therefore be reversed and a new trial ordered with costs to appellant to abide the event.
Curtis and Freedman, JJ., concurred.

Reported at p. 401 of this vol.

Reported at p. 434.

Reported at p. 478 of this vol.